UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

THOMAS FIELDS,                              :

                Plaintiff,                :

     - against -                            :

DOWNSTATE CORRECTIONAL           :
FACILITY, et al.,
                                         :
                Defendants.
------------------------------------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  12/21/2012
```

**REPORT AND
RECOMMENDATION TO
THE HONORABLE
J. PAUL OETKEN**

10 Civ. 5834 (JPO) (FM)

**FRANK MAAS**, United States Magistrate Judge.

In this prisoner civil rights action pursuant to 42 U.S.C. § 1983, plaintiff Thomas Fields ("Fields") alleges that the Downstate Correctional Facility ("Downstate"), the New York State Department of Corrections and Community Supervision ("DOCCS"), and correctional officer K. Wolf ("Officer Wolf") (collectively, the "Defendants") violated his constitutional rights by failing to prevent another inmate from assaulting him. (See ECF No. 2 ("Compl." or "Complaint")). The case has been referred to me for the limited purpose of determining whether Fields adequately exhausted his administrative remedies. For the reasons set forth below, I find that Fields has failed to exhaust those remedies properly. The Complaint should therefore be dismissed.

I.  Relevant Factual and Procedural Background

A.  Altercation and Injury[1]

On May 28, 2010, while incarcerated at Downstate, Fields witnessed an altercation involving two other inmates. (Hr'g Tr. 37-38).[2] In accordance with Downstate's security procedures, Fields turned and faced the wall, so that his back was to the fight. (Id. at 38). One of the inmates involved in the fight then began to assault Fields. (Id. at 38-39). After attempting to shield himself from the blows, Fields eventually struck his attacker in the face, causing him to fall to the ground. (Id. at 39). As the incident was occurring, Officer Wolf repeatedly ordered the inmate to stop assaulting Fields, but failed to intervene physically to stop the attack. (Compl. at 3).

Shortly after the incident, Fields began to feel pain in his hand and went to the infirmary, where he was given Motrin. (Hr'g Tr. 40). Fields visited the infirmary again later that day, and eventually was taken to an area hospital, where he was diagnosed with a broken right hand, which was placed in a cast. (Id. at 40-41).

When Fields returned to Downstate, he was housed in the infirmary rather than in his cell. (Id. at 41). He also was placed on "keep lock" status pending a disciplinary hearing concerning his role in the altercation. (Id.). Fields remained in the

---

[1] Unless otherwise noted, the facts set forth herein are either undisputed or set forth in the light most favorable to Fields.

[2] "Hr'g Tr." refers to the transcript of an evidentiary hearing held on October 20, 2011. (ECF No. 28). "Fields Dep." refers to the transcript of Fields' deposition, held on April 20, 2011. (See ECF No. 42).

2

infirmary until June 7, 2010, when he was transferred to the Green Haven Correctional Facility ("Green Haven").

On June 11, 2010, Fields participated in a disciplinary hearing at Green Haven. (See letter from Ass't Corp. Counsel Thomas M. Biesty to the Court, dated March 24, 2011, Ex. A ("Discpl. Hr'g Tr.")). Fields had previously been charged with fighting and creating a disturbance. (Id. at 11-12). At the hearing, he testified that he had acted in self-defense when he struck the other inmate and, thus, should not receive further punishment. (Id. at 13-14). Notably, Fields did not accuse Officer Wolf of failing to protect him, nor did he mention in his testimony that he had filed a grievance or otherwise complained about any shortcomings on Officer Wolf's part. (See id.).

Officer Wolf, who testified via telephone from Downstate, acknowledged that Fields acted in self-defense when he first struck his attacker, but stated that Fields then attempted to punch the inmate a second time. According to Officer Wolf, that second punch was not a permissible act of self-defense. (Id. at 15-16). The hearing officer ultimately found Fields guilty and directed that he be kept on keep lock status for thirty days without telephone or mail privileges. (Id. at 28-30).

B.   Grievance

In his pro se Complaint, which is dated July 13, 2010, Fields indicated that he had not filed a grievance regarding the incident because "the grievance system d[id] not cover iss[ues] of inmate assault." (See Compl. at 4-5).

Later, after the Defendants moved to dismiss the Complaint on the ground that Fields had failed to exhaust his administrative remedies, (see ECF No. 8), Fields sent the Court a letter in which he claimed that he did file a grievance while he was housed in the infirmary. (See ECF No. 45 (Decl. of Mr. Biesty, dated Dec. 2, 2011), Ex. 2 at 1).[3] The letter was addressed to Judge McMahon, to whom this case then was assigned. (Id.). In the letter, Fields claimed that he had attempted to submit a grievance to a correctional officer assigned to the Downstate infirmary, but that the officer told Fields that "it was useless for [him] to file a grievance . . . because the grievance system doesn't deal with inmate ass[au]lts" and, in any event, Officer Wolf "wasn't responsible for [Fields] being ass[au]lt[ed]." (Id.). Fields claimed that he nevertheless asked the officer "to please drop [his] grievance in the grievance box." (Id.). That same officer allegedly later "threatened" him. (Id.). Shortly thereafter, Fields was transferred to Green Haven. (Id. at 2-3).

On March 2, 2011, I held a telephone conference, during which Fields further discussed his efforts to exhaust his administrative remedies. Fields reiterated that

---

[3]   Fields apparently did not send the Defendants a copy of this letter. (See ECF No. 33 ("3/2/11 Tr.") at 4-5).

he had handed his grievance to an officer in the infirmary on June 1, 2010 – four days after the incident – and that the officer had stated that he could not file a grievance concerning an inmate assault. (See 3/2/11 Tr. at 5). Fields further noted that another inmate had helped him complete the grievance form because his dominant hand was in a cast. (Id. at 5-6). According to Fields, that inmate was a "certified legal clerk," whom Downstate made available to "help [inmates] fill out [their] legal paperwork" if they were unable to do so by themselves. (Id. at 6). When asked for the inmate's name, Fields stated that it was "Inmate Patterson." (Id.). Fields also acknowledged that although he was "not really familiar with the grievance system," he did "know that [he had] to file one." (Id. at 7.). At the conclusion of that conference, it was agreed that as a next step defense counsel would depose Fields. (Id. at 9).

On April 20, 2011, during his deposition, Fields again stated that he composed a grievance with the help of another inmate and gave it to an officer in the infirmary, who told Fields that he could not file it. Thereafter, however, the officer eventually took the grievance. (Fields Dep. at 115-19). Fields also testified that he had made copies of the grievance before giving it to the officer, but had lost the copies when some of his belongings were sent to the wrong facility at the time of his transfer to Green Haven. (Id. at 132-35). Fields further testified that on or about June 3, 2010, two days after allegedly filing his grievance, he had requested to speak with an inmate grievance representative who was supposed to make weekly rounds of the infirmary. (Id. at 120-21). That representative, however, "never came." (Id.). Fields made no further efforts to

follow up on his grievance until February 15, 2011 – more than six months after he filed the Complaint – at which time he filed a second grievance at Green Haven.[4] (Id. at 124-26).

Following the deposition, on June 2, 2011, Jennifer Lynn Del Medico, an associate at Jones Day, kindly agreed to represent Fields as pro bono counsel. (See ECF No. 18). During a subsequent telephone conference on September 26, 2011, Mr. Biesty noted that he had identified two inmates and approximately twenty-five officers who could have spoken with Fields concerning his grievance, but had not found anyone who corroborated Fields' version of the relevant events. (See ECF No. 39 at 3-4).

Thereafter, on October 20, 2011, the Court held an evidentiary hearing concerning whether Fields had exhausted his administrative remedies. Fields' testimony at that hearing was largely consistent with the statements he had made at his deposition and during prior conferences.[5] Earl "Skip" Hughes ("Hughes"), the supervisor of the inmate grievance program at Downstate, also testified. (See Hr'g Tr. 5-6). Hughes discussed the manner in which inmates, including inmates housed in the infirmary, may file grievances at Downstate. According to Hughes, an inmate in the infirmary who wishes to file a grievance can submit the grievance to the officer on duty, who puts it in a

---

[4]    That grievance, which Fields had dated June 1, 2010, but had not submitted until February 2011, was returned to Fields as untimely. (See id. at 124-25).

[5]    There was one minor exception. At the hearing, Fields testified that he sought to speak with an inmate representative concerning his grievance twice, not just once. (See Hr'g Tr. 53).

6

mailbox located in the infirmary. A "rounds man" then delivers the grievance to the grievance program office. (Id. at 11). Hughes noted that inmates – including those in the infirmary – also can request to speak with him personally, in which event Hughes is obligated to comply. (Id. at 13-14). Hughes testified that he "found no evidence" in the Downstate grievance log of either a grievance filed by Fields in May or June 2010, or a request by Fields to speak with Hughes or a grievance counselor. (Id. at 16-17).

    C.    Additional Procedural History

Fields' Complaint is dated July 13 and was received by the Pro Se Office of this Court on July 16, 2010. (Compl. at 1, 7). In his Complaint, in addition to Officer Wolf, Fields originally named Downstate and the New York State "Department of Corrections" ("DOCCS") as defendants. (Id. at 1). On January 1, 2011, the Defendants filed a motion to dismiss or, in the alternative, for summary judgment. (ECF No. 7). On February 1, 2011, during a telephone conference, Judge McMahon dismissed Downstate and DOCCS as defendants on immunity grounds, but denied the motion as to Officer Wolf. That same day, Judge McMahon referred the case to me to determine whether Fields had exhausted his administrative remedies with respect to his claim against Officer Wolf. (ECF No. 12). I then scheduled an evidentiary hearing. (See ECF No. 23). Shortly before the hearing was held, the Clerk of the Court reassigned the case to Your Honor. (ECF. No. 24). After the evidentiary hearing, the parties submitted post-hearing briefs. (See ECF Nos. 27 ("Fields' Mem."), 30 (Def.'s Mem)).

7

## II. Applicable Law

### A. Prisoner Litigation Reform Act

Under the Prison Litigation Reform Act ("PLRA"), a prisoner must exhaust any available administrative remedies before he may challenge prison conditions in federal court. 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, the PLRA requires "proper exhaustion," which means "using all steps that the agency holds out, and doing so properly." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (emphasis in original).

DOCCS has implemented an Inmate Grievance Program ("IGP") that permits an inmate at a state prison such as Downstate to file complaints with the facility's Inmate Grievance Resolution Committee ("IGRC"). See N.Y. Comp. Codes R. & Regs. tit. 7, § 701.1(c). The inmate may appeal an adverse IGRC decision to the facility superintendent and may further appeal to a committee of central office staff ("CORC"). Id. The inmate must submit his complaint in writing within twenty-one days of the alleged occurrence. Id. § 701.5(a)(1). The IGRC then has sixteen days to respond to the inmate grievance. Id. § 701.5(b). If the IGRC fails to act within that time period, the inmate may appeal directly to the Superintendent. Id. § 701.6(g)(2).

8

The IGP regulations require that a supply of inmate grievance complaint forms be "maintained in all special housing areas and . . . be given to inmates requesting them." Id. § 701.7(a)(1). In addition, an "IGRC staff member . . . or grievance supervisor shall make rounds of all special housing areas . . . at least once a week to allow inmates direct access to the program." Id. § 701.7(c)(1). If a grievance form is not available, an inmate also may submit a grievance on plain paper. Id. § 701.5(a)(1).

III. Discussion

    A. Failure to Exhaust

Based on the evidence before the Court, I find that Fields' claim that he filed a grievance on June 1, 2010, is not credible. In addition to failing to allege that he had filed a grievance in his Complaint, Fields failed to mention having filed a grievance during his disciplinary hearing, which was held on June 11, 2010, only ten days after he allegedly filed the grievance. Perhaps more importantly, at that hearing, Fields never suggested that Officer Wolf had failed to protect him from being assaulted, even when Fields directly questioned Officer Wolf. (See Discpl. Hr'g Tr. at 17-21). Fields' claim that he had filed a grievance against Officer Wolf, and then attempted to follow up with a grievance counselor, is not believable since he mentioned neither the alleged grievance nor the theory underlying it during his disciplinary hearing. Instead, it appears much more likely that Fields first contemplated filing a failure to protect claim against Officer Wolf after his disciplinary hearing.

This factual conclusion is buttressed by inconsistencies in Fields' statements concerning the exhaustion of his administrative remedies. For example, during the telephone conference on March 2, 2011, Fields stated that he was assisted in composing his grievance by an "Inmate Patterson," who was a "certified legal clerk." (3/2/11 Tr. 5). At the evidentiary hearing, however, Fields testified that he did not know the name of the inmate who had helped him. (See Hr'g Tr. 47). Further belying Fields' allegations is the fact that, although he shared an infirmary room with at least one inmate, no inmate was called to corroborate his testimony.

In any event, even if Fields did file a grievance in the manner that he alleges, it is undisputed that he failed to file an appeal or otherwise make timely requests for information concerning the status of his grievance. (See id. at 73-75; Fields Dep. 126, 140). As noted above, the PLRA requires "proper exhaustion," which means "using all steps that the agency holds out, and doing so properly." Woodford, 548 U.S. at 90. As this Court recently explained in a factually similar case:

> [I]f [the plaintiff] did not receive any response to the . . . grievance that he allegedly attempted to file, he still was required to exhaust his IGP remedies. This required, in the first instance, that he pursue an appeal to the superintendent once the IGRC had been afforded sixteen days to consider his grievance. Subsequently, if the superintendent did not grant him the relief he sought, [the plaintiff] was further obligated to appeal to CORC.

Gayle v. Benware, 716 F. Supp. 2d 293, 298 (S.D.N.Y. 2010). Because Fields concedes that he made no effort to exhaust his IGP remedies after he failed to receive a response to his initial grievance, he has failed to exhaust his administrative remedies properly.

    B.    Exceptions to the Exhaustion Requirement

Fields argues that, even if he did fail to exhaust, he nevertheless should be excused from the exhaustion requirement. (See Fields' Mem. at 9-12). In this connection, Fields notes that his ability to file a grievance was limited, both because he was housed in the infirmary and on keep lock status following the incident, and because he had a cast on his dominant hand. (Id.). Fields further observes that he was forced to rely on correction officers to assist him, and that those officers were "hostile toward Fields' efforts to access the grievance process to complain about an officer's failure to protect [him]." (Id. at 9-10).

A prisoner's failure to exhaust administrative remedies before filing a complaint in federal court may be excused if (1) administrative remedies were in fact unavailable; (2) the defendants forfeited the affirmative defense of non-exhaustion by failing to preserve or raise it, or their actions estop them from doing so; or (3) special circumstances justify the failure to properly exhaust. Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). "[T]he same facts sometimes fit into more than one of these categories." Giano v. Goord, 380 F.3d 670, 677 n.6 (2d Cir. 2004).

11

With respect to the first Hemphill category, the relevant question is whether "a similarly situated individual of ordinary firmness [would] have deemed [the grievance process] available." 380 F.3d at 688. As set forth above, a preponderance of the evidence suggests that Fields' made no effort to file a grievance while at the Downstate infirmary. According to the credible testimony of Hughes, however, inmates are able to file grievances from the infirmary, even if they are on keep lock status. (Hr'g Tr. 11-12). Consequently, "an individual of ordinary firmness" in Fields' position would have concluded that the grievance process was available.

Turning to Fields' contention that the officers at Downstate were "hostile" to a grievance against a fellow officer, it is undisputed that Fields was transferred to Green Haven on June 7, 2010, only ten days after the incident. Fields therefore had more than ten days during which he could have timely filed a grievance at that facility, where the officers presumably would have been less protective of Officer Wolf. See N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a)(1). Furthermore, as Hughes noted in his testimony, Fields could have requested to speak to the supervisor of the IGP directly, but failed to do so. Even if Fields were able to show that he was operating under the mistaken impression that his grievance was being processed, it was incumbent upon him to take steps to appeal when he heard nothing further. Fields, however, took no additional steps to prosecute his grievance until February 15, 2011, when he filed a grievance at Green Haven. In short, he took no action other than the filing of his Complaint in this action for more than six months after the incident. See Gayle, 716 F. Supp. 2d at 299

12

(noting that if the plaintiff could "file two separate lawsuits within ten days of the incident, he clearly was capable of exhausting his remedies under the IGP before coming to this Court").

In support of his claim that he should be excused from the exhaustion requirement, Fields cites several cases in which courts have denied motions for summary judgment because the plaintiffs claimed that administrative remedies were unavailable to them. See, e.g., Sandlin v. Poole, 575 F. Supp. 2d 484 (W.D.N.Y. 2008); Hairston v. LaMarche, No. 05 Civ. 6642 (KMW) (AJP), 2006 WL 2309592 (S.D.N.Y. Aug. 10, 2006); Perkins v. Obey, No. 00 Civ. 1691 (LTS) (JCF), 2005 WL 433580 (S.D.N.Y. Feb. 23, 2005). In each of those cases, however, the court had not conducted an evidentiary hearing and, thus, was not in a position to decide the factual questions presented by the parties' dueling submissions. Here, the Court has held an evidentiary hearing and has found that (1) Fields' claim that he filed a grievance is not believable, and (2) Hughes' testimony concerning the access of inmates to the grievance process at Downstate is entirely credible. The cases upon which Fields relies are therefore inapposite.

Turning to the final two Hemphill categories, neither provides a basis for relieving Fields of his obligation to exhaust his administrative remedies. First, Fields has failed to demonstrate that Officer Wolf personally impeded his ability to file a grievance, so Officer Wolf obviously cannot be estopped from raising a failure-to-exhaust defense. Additionally, Fields has failed to demonstrate any "special circumstances" that justify his

failure to appeal after receiving no response to the grievance he allegedly thought he had filed.  See Hemphill, 380 F.3d at 686.

IV.   Conclusion

For the foregoing reasons, the Complaint in this action should be dismissed based on Fields' failure to exhaust his administrative remedies.  Notwithstanding that result, Ms. Del Medico and her firm are to be commended for their extensive (and entirely uncompensated) efforts on Fields' behalf.

V.  Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (e). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable J. Paul Oetken, United States District Judge, and to the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Oetken. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b).

SO ORDERED.

Dated:   New York, New York
         December 20, 2012

                                          _____
                                          FRANK MAAS
                                          United States Magistrate Judge

Copies via ECF to:

Jennifer L. Del Medico, Esq.
Jones Day

Christina Okereke
Office of the Attorney General
of the State of New York
Fax: (212) 416-6009